IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 15 CR 489 JAR |
| | ) |
| MELVIN HARDY, | ) |
| | ) |
| Defendant. | ) |

**MOTION TO REOPEN MOTION HEARING AND MOVE TO SUPPRESS EVIDENCE AND STATEMENTS**

Comes now Melvin Hardy, Defendant, by and through his attorney Diane L. Dragan, Assistant Federal Public Defender, and requests this Court allow Mr. Hardy to reopen his right to file motions based on recently disclosed evidence that the government utilized a cell site locator to locate Mr. Hardy on January 9, 2014 (and potentially on January 7, 2014) without a proper warrant and seized evidence from him including his cell phone, crack cocaine, marijuana and morphine. The government intends to introduce this evidence against Mr. Hardy.  Mr. Hardy would like the opportunity to litigate motions to suppress related to any and all evidence seized by law enforcement officers on January 7, 2014 and January 9, 2014.  Additionally, Mr. Hardy requests the evidence of his related 2014 conviction in Docket No. 1422-CR00488-01 be excluded from trial.  In support thereof, Defendant states to the Court the following:

FACTS

1. On January 2, 2014 a Confidential Informant (CI) contacted detectives from the SLPD regarding a residence located at 5260 Genevieve, St. Louis, Missouri.[1]  The CI

---

[1] *See* Exhibit 1, Search Warrant Affidavit

    provided information that the residence was being used to store stolen property (flat screen television sets), as well as firearms and drugs.  Additionally, the informant provided information that "Bud" AKA Michael Sims, "MD" AKA Melvin Hardy and Sean AKA Sean Laden were three of the primary occupants of the residence.  A surveillance of the residence was set up by law enforcement, and officers observed vehicles associated with Sims and Hardy at the residence.  Laden was a permanent resident of that address.  A search warrant was requested and obtained for the residence.

2. On January 7, 2014 officers observed Mr. Sims and an individual who resembled Mr. Hardy leaving the residence, but did not pursue them.[2]  An officer approached the home and was let in by Mr. Laden's uncle.  During a search of the home officers seized firearms, ammunition, heroin, marijuana, and morphine and a television.

3. On January 9, 2014, detectives prepared a police report stating that they had received information that Mr. Hardy was located at a residence at 4042 C.D. Banks, St. Louis, Missouri.  Defense counsel inquired of the government on July 22, 2016 if the "information" came in the form of a Stingray or similar device.  The government provided an Affidavit to counsel on July 27, 2016 at the pretrial motions hearing.[3]  It appears based on the Affidavit provided that a "StingRay" device was used by officers, without a proper warrant, to locate Mr. Hardy's cellphone.  As a result of the unauthorized search, Mr. Hardy was located, arrested and several items were seized

---

[2] *See* Exhibit 2, Police report
[3] *See*   Affidavit

      from the residence pursuant to a search including a cell phone, crack cocaine, marijuana and morphine pills.

4. Unaware of the illegal search and seizure, Mr. Hardy entered pleas of guilty in Docket No. 1422-CR00488-01 for the conduct which occurred on January 9, 2014 and was placed on four years probation. The government seeks to use this evidence against Mr. Hardy at trial.

ARGUMENT

Between January 7, 2014 and January 9, 2014, law enforcement agents had no warrant authorizing them to use a cell-site simulator device, or "StingRay," and the warrantless use of such device against Mr. Hardy constituted an unlawful search. Mr. Hardy requests the opportunity to litigate the suppression of all evidence and statements related to the searches and seizures on those days. Mr. Hardy has only recently been made aware that a "StingRay" device was used to collect evidence that lead to his 2014 conviction in state court, and it would be a manifest injustice in this case to allow evidence obtained through an unlawful search to be used against Mr. Hardy now.

A cell site simulator ("StingRay" is one name for this kind of device) is a device that "locates cell phones by mimicking the service provider's cell tower (or 'cell site') and forcing cell phones to transmit 'pings' to the simulator. The device then calculates the strength of the 'pings' until the target phone is pinpointed."[4]

The government needed a warrant that contained an accurate and detailed amount of information in order to use a cell site simulator to perform this Fourth Amendment search of Mr. Hardy. Agents *did* provide a warrant application regarding the January 9, 2014 search which

---

[4] *United States v. Lambis*, 2016 U.S. Dist. LEXIS 90085, 2 (S.D.N.Y. July 12, 2016)

authorized the installation and monitoring of a pen register and/or trap and trace device and/or caller ID and for the production of telecommunications records.[5]  However, the warrant is not legally sufficient in regards to the use of a cell site simulator.  The application fails to provide adequate information on what a cell site simulator is and how it works to a court in order to assure the search would not be overly intrusive.  The application does not describe with particularity what information data is scooped using the device.  Without these details, the application is overbroad in that it allows law enforcement to search and seize information from a person unrelated to suspected criminal activity and also information pertaining to third parties to whom it lacks any probable cause.  In order for a magistrate issuing a warrant to be ensured of the full scope of the search and of what material is to be seized, the application should have included information such as the government's intent to use a cell site simulator and that the cell site simulator will gather all signaling information from phones used by the target, including information that at times may be unrelated to suspected criminal activity.

As was the case in *Lambis*, "the use of the cell-site simulator to obtain more precise information about the target phone's location was not contemplated by the original warrant application."[6]  Obtaining a warrant for "pen register information and cell site location information ('CSLI') for a target cell phone" is not the same as obtaining a warrant to use a specific and uncommon device to collect "more precise information about the target phone's location [that] was not contemplated by the original warrant application."[7]  "If the scope of the search exceeds that permitted by the terms of a validly issued warrant …, the subsequent seizure is

---

[5] *See* Application by Detective John Baumann, January 8, 2014 (Exhibit 3).
[6] *Lambis*, 2016 U.S. Dist. at 8.
[7] *Id*. at 1, 8.

unconstitutional without more."[8]   The government's "use of the cell-site simulator revealed 'details of the home that would previously have been unknowable without physical intrusion.'"[9]  Even the U.S. Department of Justice changed its policies in September 2015 and now requires government agents to "obtain a search warrant supported by probable cause before using a cell-site simulator."[10]

The Fourth Amendment of the United States Constitution assures that people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Searches and seizures must be reasonable,[11] and warrantless searches "are per se unreasonable," with a few exceptions.[12]  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."[13]   In *Kyllo*, the Supreme Court held that "[w]here … the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant."[14]

Here, the use of the cell site simulator "constitutes a Fourth Amendment search within the contemplation of *Kyllo*."[15]   In *Kyllo*, the Court "held that a Fourth Amendment search occurred when Government agents used a thermal-imaging device to detect infrared radiation emanating

---

[8] *Id*. at 8 (quoting *Horton v. California*, 496 U.S., 128, 140 (1990)).
[9] *Id*. at 9 (quoting *Kyllo*, 533 U.S. at 40).
[10] *See* Office of the Deputy Attorney General, Justice Department Announces Enhanced Policy for Use of Cell-Site Simulators (Sept. 3, 2015), *available at* https://www.justice.gov/opa/pr/justice-department-announces-enhanced-policy-use-cell-site-simulators.
[11] *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).
[12] *Katz v. United States*, 389 U.S. 347, 357 (1967).
[13] *Kyllo v. United States*, 533 U.S. 27, 33 (2001).
[14] *Lambis*, 2016 U.S. Dist. at 4 (quoting *Kyllo*, 533 U.S. at 40).
[15] *Id*. at 8-9; see also *United States v. Knotts*, 460 U.S. 276, 281 (1983); *State v. Andrews*, 227 Md. App. 350, 390 (Md. Ct. Spec. App. 2016) (holding that the use of a cell site simulator requires a search warrant based on probable cause, and finding that the trial court properly suppressed evidence obtained through the use of the cell-site simulator).

from a home."[16]   Because this was the government's "through-the-wall surveillance" of "human activity in the home" using a "device that is not in general public use," this was the kind of surveillance that constituted a Fourth Amendment search and thus required a warrant.[17]   Here, the agents used a cell site simulator to force "pings" from Mr. Hardy's cellphone to be directed to the simulator instead of a Sprint cell tower.  The detection and collection of Mr. Hardy's cellphone "pings" emanating from the inside of residences on January 9 using a cell site simulator, a device not commonly used in society, is just like the detection of the infrared radiation emanating from the home in *Kyllo* using a thermal-imaging device.  Furthermore, the cell site simulator was the same kind of "through-the-wall surveillance" for the purpose of detecting "human activity in the home" as was done in *Kyllo*.  In *Kyllo*, the "human activity" being surveyed was the manufacturing of drugs, and in this case the "human activity" being surveyed was the location of Mr. Hardy and his phone.

   Without the cell site simulator bringing the government to the residence that contained Mr. Hardy's cellphone, the government would not have a basis to make an inquiry of the residents, and would definitely not have a basis to perform a search of the premises.  Without the simulator, the reasonable suspicion necessary to justify law enforcement even knocking on a front door and asking to search the interior did not exist.  Even a *Terry* stop requires reasonable suspicion of criminal activity.[18]

   WHEREFORE, Defendant prays this court allow him to reopen motions, and grant his motion to suppress evidence and statements seized on January 7, 2014 and January 9, 2014.  Mr. Hardy requests the trial date be continued to allow for litigation of these suppression issues.

---

[16] *Id.* at 4 (citing *Kyllo*, 533 U.S. at 40).
[17] *Kyllo*, 533 U.S. at 35-36, 40.
[18] *See Terry v. Ohio*, 392 U.S. 1 (1968).

        Respectfully submitted,

        Diane L. Dragan
        Assistant Federal Public Defender
        1010 Market Street, Suite 200
        St. Louis, Missouri 63101
        Telephone: (314) 241-1255
        Fax: (314) 421-3177
        E-mail: Diane_Dragan@fd.org

        ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon, Assistant United States Attorney Cris Stevens.

        /s/ Diane L. Dragan
        Diane L. Dragan
        Assistant Federal Public Defender